**UNITED STATES of America, Plaintiff,**

**v.**

**CANNABIS CULTIVATORS CLUB; and Dennis Peron, Defendants.**

**And Related Actions.**

Nos. C 98–0085 CRB, C 98–0086 CRB, C 98–0087 CRB, C 98–0088 CRB, C 98–0089 CRB and C 98–0245 CRB.

United States District Court, N.D. California.

May 13, 1998.

Michael J. Yamaguchi, United States Attorney, San Francisco, CA, Mark T. Quinlivan, USDJ–Civil Division, Washington, DC, Gary G. Grindler, Arthur R. Goldberg, David J. Anderson, U.S. Department of Justice, Civil Division, Washington, DC, for U.S.

J. Tony Serra, Serra, Lichter, Daar, Bustamante & Michael, San Francisco, CA, William G. Panzer, Oakland, CA, Brendan R. Cummings, Berkeley, CA, for Cannabis Cultivators Club, Dennis Peron.

Terence Hallinan, SF District Attorney, San Francisco, CA, for City and County of San Francisco.

## MEMORANDUM AND ORDER

BREYER, District Judge.

## INTRODUCTION

The issue presented by these related lawsuits is whether defendants' admitted distribution of marijuana for use by seriously ill persons upon a physician's recommendation violates federal law, 21 U.S.C. § 841(a), and if so, whether defendants' conduct in this regard should be enjoined pursuant to the injunctive relief provisions of the federal Controlled Substances Act. See 21 U.S.C.

§ 882(a). This is the *only* issue before the Court. These lawsuits, for example, do not challenge the constitutionality of Proposition 215, the medical marijuana initiative, as a whole. Nor do they reflect a decision on the part of the federal government to seek to enjoin a local governmental agency from carrying out the humanitarian mandate envisioned by the citizens of this State when they voted to approve this law.

These cases also do not present the question of whether all conduct exempt from prosecution under the state drug laws by Proposition 215 violates federal law. For example, the Court is not deciding whether a seriously ill person who possesses marijuana for personal use upon a physician's recommendation is in violation of federal law. Rather, the sole issue here is whether defendants' conduct, which may be lawful under state law, may nevertheless violate federal law and can thus be enjoined.

Finding that there is a strong likelihood that defendants' conduct violates the Controlled Substances Act, the Court concludes that the Supremacy Clause of the United States Constitution requires that the Court enjoin further violations of the Act.

## BACKGROUND

### A. *Proposition 215 and the Federal Drug Laws.*

In November 1996, 56% of those participating in the state-wide election voted in favor of Proposition 215, the "Medical Use of Marijuana" initiative, known also as the "Compassionate Use Act" (the "Act"). The Act makes it legal under California law for seriously ill patients and their primary caregivers to possess and cultivate marijuana for use by the seriously ill patient if the patient's physician recommends such treatment. In particular, it exempts a seriously ill patient, or the patient's primary caregiver, from prosecution under California Health and Safety Code § 11357, relating to the possession of marijuana, and § 11358, relating to the cultivation of marijuana. See California Health & Safety Code § 11362.5(d).

As a result of the passage of Proposition 215, several individuals, including defen-

dants, organized "medical cannabis dispensaries" to meet the needs of seriously ill patients. These nonprofit dispensaries provide marijuana to seriously ill patients upon a physician's recommendation. According to defendants, these patients previously had to purchase marijuana, if they·were able to purchase it at all, on the black market at exorbitant prices and of questionable quality.

At the time that California's voters approved the initiative, federal law—the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act")—did, and still does, strictly prohibit the manufacture and distribution of marijuana, and the possession of marijuana with the intent to manufacture or distribute. *See* 21 U.S.C. § 841(a)(1). In particular, the Controlled Substances Act established a comprehensive regulatory scheme which placed controlled substances in one of five "Schedules" depending on each substance's potential for abuse, the extent to which each may lead to psychological or physical dependence, and whether each has a currently accepted medical use in the United States. *See* 21 U.S.C. § 812(b). Congress determined that "Schedule I" substances have a "high potential for abuse," "no currently accepted medical use in treatment in the United States," and a lack of accepted "safety for use of the drug or substance under medical supervision." 21 U.S.C. § 812(b)(1). Schedule I substances are strictly regulated; no physician may dispense any Schedule I controlled substance to any patient outside of a strictly controlled research project registered with the DEA, and approved by the Secretary of Health and Human Services, acting through the Food and Drug Administration ("FDA"). *See* 21 U.S.C. § 823(f). Congress placed marijuana in Schedule I at the time it passed the Controlled Substances Act and its designation has not changed since then. *See* 21 U.S.C. § 812(c)(c)(10).

### B. *The California Courts and Proposition 215.*

In *People v. Trippet,* 56 Cal.App.4th 1532, 66 Cal.Rptr.2d 559 (1997), the California Court of Appeal, First District, interpreted

Proposition 215 for the first time in a published decision. It held that although Proposition 215 does not exempt a seriously ill patient and her primary caregiver from Health and Safety Code § 11360, which prohibits the transportation of marijuana, a defendant in a criminal case might have a Proposition 215 defense to a charge of illegally transporting marijuana if "the quantity transported and the method, timing and distance of the transportation are reasonably related to the patient's current medical needs." *Trippet,* 56 Cal.App.4th at 1550–51, 66 Cal.Rptr.2d 559. The court reasoned that Proposition 215 would make no sense if a patient's primary caregiver would be guilty of a crime .for "carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room." *Id.* at 1550, 66 Cal.Rptr.2d 559.

Three months later, a different division of the same court decided *People ex rel. Lungren v. Peron,* 59 Cal.App.4th 1383, 70 Cal. Rptr.2d 20 (1997). A unanimous court held that the defendants in that action, Dennis Peron and the San Francisco Cannabis Cultivators Club, both defendants here, are not primary caregivers within the meaning of the statute. A majority of that court disagreed with *Trippet* by also holding that while Proposition 215 exempts seriously ill patients and their caregivers from California law prohibiting the possession and cultivation of marijuana (Health & Safety Code § 11357, § 11358), it does not, under any circumstances, exempt them from Health and Safety Code § 11359 and § 11360, which prohibit the sale or giving away of marijuana. *Id.* at 1392, 70 Cal. Rptr.2d 20. The California Supreme Court denied review of that decision on February 25, 1998.

### C. *The Federal Lawsuits.*

Less than a month after the *Peron* decision, and more than a year after California's voters approved Proposition 215, the United States filed six separate lawsuits against six independent cannabis dispensaries and individuals associated with the management of the dispensaries.[1] The federal government

---

1. The defendants in the related actions are: Can-

nabis Cultivators Club and Dennis Peron (98–

alleges that defendants' manufacture and distribution of marijuana, and possession with the intent to manufacture and distribute marijuana, violates 21 U.S.C. § 841(a)(1); defendants' use of a facility (i.e., the locations of the dispensaries) for the purpose of manufacturing and distributing marijuana violates 21 U.S.C. § 856(a)(1); and that the individual defendants' conspiracy to violate the Controlled Substances Act violates 21 U.S.C. § 846. The lawsuits seek to preliminarily and permanently enjoin defendants' conduct pursuant to the statute which provides the federal district courts with jurisdiction to enjoin violations of the Controlled Substances Act. *See* 21 U.S.C. § 882(a).

On the same day the federal government filed its lawsuits, it filed motions for a preliminary injunction, permanent injunction and summary judgment in each action. In support of its motions, the government submitted the affidavits of several government agents who attest to their undercover purchases of marijuana from defendants at the various defendant dispensaries.

The six lawsuits were randomly assigned to various judges of this District. Pursuant to Local Rule 3–12, all six were reassigned to this Court as related cases. The Court held a status conference on January 30, 1998, to address defendants' request for additional time to respond to the federal government's motions. At the status conference, and in their papers in support of their request for a continuance, defendants advised the Court that they strenuously dispute the factual assertions in the affidavits with respect to the sale of marijuana to non-seriously ill persons and persons without a physician's recommendation, and contend that much of the federal government's evidence was obtained in violation of the fourth amendment. Over the federal government's objection, the Court granted defendants an extension of time to respond. The Court further ordered that [f]or purposes of plaintiff's motions, the parties shall assume that defendants' alleged conduct falls squarely within that permitted by California Proposition 215, California Health & Safety Code § 11362.5. For example, the parties shall assume that all defendants are "primary caregivers" within the meaning of the statute, that all persons to whom defendants distribute or dispense marijuana are seriously ill, and that a physician has determined that the person's health would benefit from the use of marijuana and has made an oral or written recommendation to that effect. Whether the government illegally obtained the evidence upon which it bases its motions shall not be addressed at this time.

February 9, 1998 Order. By its Order, the Court sought to avoid a factual dispute as to whether Proposition 215 applies to defendants' conduct.

Prior to the hearing on the federal government's motions, defendants filed a motion to dismiss for lack of jurisdiction on the ground that Congress does not have authority under the Commerce Clause to regulate defendants' conduct. Defendants also moved to dismiss on the ground that the Court should abstain pursuant to various abstention doctrines.

The Court also received memoranda in opposition to the federal government's motion from *amici curiae* City and County of San Francisco, as represented by the San Francisco District Attorney, and other cities in which defendant dispensaries are located. The City and County of San Francisco and the other cities urge the Court not to adopt the injunctive relief sought by the federal government because of the adverse consequences an injunction would have on the public health of their citizens. In particular, the San Francisco District Attorney asks the Court to limit any injunction so as not to exclude distribution to those patients for whom marijuana is a medical necessity, possibly by the City and County of San Francisco itself. *See* Memorandum of *Amicus Curiae* District Attorney of San Francisco at 11.

0085); Marin Alliance for Medical Marijuana and Lynette Shaw (98–0086); Ukiah Cannabis Buyers' Club, Cherrie Lovett, Marvin Leherman and Mildred Leherman (98–0087); Oakland Cannabis Buyers' Cooperative and Jeffrey Jones (98– 0088); Flower Therapy Medical Marijuana Club, John Hudson, Mary Palmer and Barbara Sweeney (98–0089); and Santa Cruz Cannabis Buyers Club (98–0245).

The Court held a hearing on all pending motions on March 24, 1998. All parties, and *amici curiae* San Francisco District Attorney, argued at the hearing. The Court requested that the parties· submit additional briefing· on issues raised at the hearing and took the matter under submission on April 16, 1998.

## DISCUSSION

■ ·The Supremacy Clause of Article VI of the United States Constitution mandates that federal law supersede state law where there is an outright conflict between such laws. *See Gibbons v. Ogden,* 22 (9 Wheat) U.S. 1, 210, 6 L.Ed. 23 (1824); *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Industrial Truck· Ass'n, Inc. v. Henry,* 125 F.3d 1305, 1309 (9th Cir.1997) (state law is preempted "where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress"). Recognizing this basic principle of constitutional law, defendants .do not contend that Proposition 215 supersedes federal law, 21 U.S.C. § 841(a). Indeed, Proposition 215 on its face purports only to exempt certain patients and their primary caregivers from prosecution under certain *California* drug laws—it does not purport to exempt those patients and caregivers from the federal laws. One of the ballot arguments in favor of the initiative in fact states: "Proposition 215 allows patients to cultivate their own marijuana simply 'because federal law' prevents the sale of marijuana and a state initiative cannot overrule those laws." *Peron,* 59 Cal.App.4th at 1393, 70 Cal.Rptr.2d 20 (quoting Ballot Pamphlet, Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1996 p. 60)).

Defendants argue instead that the Court should dismiss the federal government's actions on abstention grounds and on the ground that 21 USC § 841(a) exceeds Congress's authority under the Commerce Clause. Assuming that the Court has jurisdiction, defendants' arguments fall into three categories: (1) defendants have not violated the federal law; (2) defendants have valid defenses to their·violation of the law; and (3) equitable principles preclude injunctive relief. We now turn to each of these arguments.

## I. Jurisdiction.

### A. *Abstention.*

■ We start with the proposition that the ·federal courts have an "unflagging obligation" to exercise their jurisdiction. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Miofsky v. Superior Court,* 703 F.2d 332, 338 (9th Cir. 1983). While the defendants have asked the Court to abstain, abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist.,* 424 U.S. at 813, 96 S.Ct. 1236 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). Defendants· contend that the "extraordinary and narrow" exception to this duty exists here under *Burford, Pullman* or *Colorado River,* abstention doctrines.

#### 1. *Burford* Abstention.

■ *Burford* abstention is based on comity. It may be appropriate if the lawsuit involves difficult questions of state law, resolution of which is a matter of substantial local concern transcending the result in the case at bar. Federal courts may abstain in such cases if federal adjudication would be disruptive of state efforts to establish a coherent policy with respect to the matter at issue. *See New Orleans Public Service, Inc. v. City Council of New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); *Burford v. Sun Oil Co.,* 319 U.S. 315, 334, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is appropriate only if the following factors are met:

(1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts have special competence; and (3) that federal

review might disrupt state efforts to establish a coherent policy.

*Tucker v. First Maryland Savings & Loan, Inc.,* 942 F.2d 1401, 1404–05 (9th Cir.1991).

■ Defendants contend that questions of who is a "primary caregiver" within the meaning of Health and Safety Code § 11362.5, and precisely what conduct is permitted by Proposition 215, are difficult and uncertain issues of state law. For example, defendants contend that there is a question whether Proposition 215 exempts the transportation as well as cultivation and use of medical marijuana from California's drug laws. *Compare Peron,* 59 Cal.App.4th at 1393–95, 70 Cal.Rptr.2d 20 *with Trippet,* 56 Cal.App.4th at 1550–51, 66 Cal.Rptr.2d 559. They also assert that "medical marijuana" is "a policy problem of substantial import," the importance of which transcends the result in this case. They assert that "[b]y potentially invalidating Proposition 215 on preemption grounds, this court would effectively halt California's attempt to make section 11362.5 compatible with federal law." Defendants' Memorandum in Support of Motion to Dismiss at 7.

These lawsuits, however, are not appropriate candidates for *Burford* abstention. At a minimum, the second requirement for such abstention is not present. The federal issue—whether defendants' conduct violates federal law—is unrelated to the state questions identified by defendants, whether defendants' conduct is legal under state law. Proposition 215 may exempt defendants' conduct from prosecution under California's criminal laws and, for purposes of the federal government's motion, the Court has assumed that it does. But the only issue in these lawsuits is whether defendants' conduct violates federal law. *See New Orleans Public Service, Inc.,* 491 U.S. at 362, 109 S.Ct. 2506 (*Burford* abstention is inappropriate where federal issues control).

None of the cases cited by defendants in support of *Burford* abstention involved a lawsuit, such as these, where the resolution of the state law issues was immaterial. In *Fireman's Fund Ins. Co. v. Quackenbush,* 87 F.3d 290 (9th Cir.1996), for example, the Ninth Circuit affirmed the district court's

application of *Burford* abstention to an action challenging the constitutionality of Proposition 103 (insurance rate rollback initiative) because the federal issues were "intimately conjoined" with difficult and unresolved issues of state law. *Id.* at 297. Here, in contrast, the scope of Proposition 215 is not at issue since the constitutionality of the initiative is not being challenged. All that is at issue in these actions is whether defendants' conduct violates federal law. The Court need not examine state law to answer that question.

### 2. *Pullman* Abstention.

■ Defendants' opposition memorandum argued that abstention is appropriate under an additional doctrine, *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under *Pullman* abstention a federal court may defer hearing a case when " 'a federal constitutional issue … might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). A lawsuit must meet three criteria for *Pullman* abstention to be appropriate:

> (1) the complaint must touch a sensitive area of social policy into which the federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the potentially determinative state law issue is uncertain.

*Kollsman v. City of Los Angeles,* 737 F.2d 830, 833 (9th Cir.1984). Defendants submit that the Court should abstain until the California courts have had an opportunity to define more clearly what state law permits in order to minimize any conflict between state and federal laws.

*Pullman* abstention is nonetheless inappropriate because the second criterion, and therefore the third, are inapplicable. As stated above, whether state law permits defendants' conduct, and to what extent it per-

mits defendants' conduct, is immaterial. The issue here is whether that conduct is prohibited by federal law. Thus, a definitive ruling on the state issues, i.e., the scope of Proposition 215, will not obviate the need for deciding the constitutional issues presented by this lawsuit, including the alleged due process right to be free from pain.

### 3. *Colorado River* Abstention.

In the interest of "wise judicial administration," federal courts may stay a case involving a question of federal law where a concurrent state action is pending in which substantially similar issues are raised. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "[F]ederal abstention and deference to parallel state proceedings is appropriate under *Colorado River* even when none of the more established doctrines apply." *Fireman's Fund*, 87 F.3d at 297. While no one factor is determinative, the Supreme Court has listed a number of factors to consider in deciding whether such abstention is appropriate. These factors include, "the desireabilty of avoiding piecemeal litigation," and "the order in which the jurisdiction was obtained by the concurrent forums," *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236; whether the state court proceedings are adequate to "protect the federal litigant's rights," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 23, 103 S.Ct. 927; and the risk of conflicting results. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236.

Defendants assert that the state proceeding in *People v. Peron* is substantially similar to these actions since it involves a challenge to the same conduct at issue here and seeks the same relief sought here—an injunction.

The Court concludes, however, that the *People v. Peron* proceeding is not substantially similar. First, it does not involve all the parties to this lawsuit. Thus, the federal government's interests in these actions with respect to the defendants who are not defendants in *Peron* may not be adequately represented by that proceeding. Second, the issues are different. In *Peron*, the State seeks to enjoin defendant Peron's conduct on the

ground that it violates state law; that is, that it does not fall within the conduct permitted by Proposition 215. Here, in contrast, the federal government seeks to enjoin defendants' conduct on the ground that it violates federal law; it is immaterial whether that conduct falls within that permitted by Proposition 215. Since the issues are not similar there is no risk of conflicting results. None of the cases cited by defendants involved a situation like here, where the federal government seeks to enforce federal law in federal court. In such a situation, this Court is required to exercise its jurisdiction.

### B. *Interstate Commerce Clause.*

Since there is no basis for abstention, we now turn to the question of jurisdiction. Congress has the authority to regulate an activity pursuant to the Commerce Clause of the United States Constitution if the activity regulated falls into one of three categories:

> First, Congress may regulate the use of the channels of interstate commerce.... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.... Finally Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce.

*United States v. Lopez*, 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (citations omitted). In *Lopez*, the Supreme Court held that the Gun–Free School Zones Act of 1990 ("School Zones Act") exceeds Congress's Commerce Clause authority. The School Zones Act made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(1)(A)(1988 ed. Supp. V). The Court held that the School Zones Act "has nothing to do with 'commerce' or any sort of economic activity.... and is not an essential part of a larger regulation of economic activity, in which the regu-

latory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 561, 115 S.Ct. 1624. It noted that neither the statute nor the legislative history included any congressional findings regarding the effects of gun possession in a school zone on interstate commerce, and rejected the government's theories as to such effects. *Id.* at 562, 115 S.Ct. 1624.

Defendants contend that this Court is without jurisdiction to hear these related cases because Congress does not have the authority to regulate defendants' conduct under the Commerce Clause, just as it does not have authority to regulate possession of a firearm in a school zone. They submit that all of their activities are purely intrastate; therefore, pursuant to *Lopez,* the Controlled Substances Act is unconstitutional as applied to them.

█ Congress has the power "to declare that an entire class of activities affects commerce." *Maryland v. Wirtz,* 392 U.S. 183, 192, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). "The only question for the courts then is whether the class is within the reach of the federal power." *Id.; see also United States v. Darby,* 312 U.S. 100, 120–21, 61 S.Ct. 451, 85 L.Ed. 609 (1941) (where "Congress itself has said that a particular activity affects the commerce," the only function of a court "[i]n passing on the validity of legislation . . . is to determine whether the particular activity regulated or prohibited is within the reach of the federal power"). "Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class." *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971).

█ Congress has made detailed findings that the *intrastate* manufacture, distribution, and possession of controlled substances, as a class of activities, "have a substantial and direct effect upon interstate commerce." 21 U.S.C. § 801(3). In particular, Congress found that, "after manufacture, many controlled substances are transported in interstate commerce," *id.* § 801(3)(A); that "controlled substances distributed locally usually have been transported in interstate com-

merce immediately before their distribution," *id.* § 801(3)(B); that "controlled substances possessed commonly flow through interstate commerce immediately prior to such possession," *id.* § 801(4); that "[l]ocal distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances," *id.* § 801(4); and that "[c]ontrolled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate," *id.* § 801(5). Therefore, "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." *Id.* § 801(6). Since *Lopez* was decided, the Ninth Circuit has held that Congress's enactment of the Controlled Substances Act is constitutionally permissible under the Commerce Clause. *See United States v. Bramble,* 103 F.3d 1475, 1479–80 (9th Cir.1996); *United States v. Tisor,* 96 F.3d 370, 373–75 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997); *United States v. Kim,* 94 F.3d 1247, 1249–50 (9th Cir.1996); *United States v. Staples,* 85 F.3d 461, 463 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 318, 136 L.Ed.2d 233 (1996).

Defendants respond that the Ninth Circuit cases are inapplicable to the facts of these actions because those cases involved (1) conduct that was prohibited under state law; and (2) intrastate illicit drug trafficking activities in the same "class of activities" as those interstate activities prohibited by the Controlled Substances Act. Here, in contrast, defendants argue that their conduct—the distribution of marijuana to seriously ill patients for the patient's personal medical use—is not within that class of activities and does not substantially effect interstate commerce.

There can be no debate that when Congress passed the Controlled Substances Act it was primarily concerned with traditional for-profit drug trafficking rather than the not-for-profit supply of medical marijuana to seriously patients in accordance with state law. Even assuming, however, that defendants' activities are within a different "class of activities" from that which Congress ex-

pressly considered, their activities are not within a class that, by its nature, does not have a substantial effect on interstate commerce. Whereas defendants' conduct in the particular instances at issue here may not have had any effect on intrastate commerce, and for purposes of the federal government's motion the Court assumes that at an evidentiary hearing defendants could prove that all marijuana was cultivated locally, distributed locally, and consumed locally by California residents, it is not true that the class of activities within which defendants' conduct falls—non-profit distribution of medical marijuana—necessarily does not affect interstate commerce.

Medical marijuana may be grown locally, or out of the state or country, and there is nothing in the nature of medical marijuana that limits it to intrastate cultivation. Similarly, it may be transported across state lines and consumed across state lines. In *Lopez*, in contrast, the class of activities prohibited—mere *possession* of a firearm near a school—does not have a substantial effect on interstate commerce. This case, unlike *Lopez*, is not about mere possession but rather about distribution, a class of activities that, even if done for the humanitarian purpose of serving the legitimate health care needs of seriously ill patients, can affect interstate commerce.

To hold that the Controlled Substances Act is unconstitutional as applied here would mean that in every action in which a plaintiff seeks to prove a defendant violated federal law, an element of every case-in-chief would be that the defendant's specific conduct at issue, based on facts proved at an evidentiary hearing or trial, substantially affected interstate commerce. No case so holds and the Court declines to do so for the first time here. Accordingly, the Court has jurisdiction to hear this matter.

## II. The Federal Government's Motion.

We now turn to the relief sought by the federal government and whether the federal government has met its burden.

### A. *The Motion for a Preliminary Injunction is the Only Motion Before the Court.*

The federal government styled its moving papers as a motion for "preliminary injunction, permanent injunction and summary judgment." It filed this hybrid motion the same day it filed the six related lawsuits. Defendants correctly object to the motion for summary judgment on the ground that the Federal Rules of Civil Procedure permit a motion for summary judgment by a plaintiff "at any time after the expiration of 20 days from the commencement of the action." Fed.R.Civ.P. 56(a). The federal government's motion for summary judgment was thus premature. The federal government contends that it orally renoticed the motions during the scheduling conference on January 30, 1998. The Court's February 9, 1998 Order, however, set the briefing schedule for the federal government's motion for *preliminary injunction* only; it made no mention of a motion for summary judgment. If the federal government believed the Court was in error, it had an obligation to so notify the Court and the defendants at that time. As it failed to do so, the only federal government motion pending is the motion for a preliminary injunction.

### B. *Preliminary Injunction Standard.*

The general standards for a preliminary injunction are well-established. The court considers: (1) likelihood of success on merits; (2) possibility of irreparable harm to the moving party if the injunction is not granted; (3) the balance of hardships; and (4) in certain cases, whether the public interest will be advanced by granting preliminary relief. *See Miller v. California Pacific Medical Center*, 19 F.3d 449, 456 (9th Cir.1994); *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987). The moving party must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." *Miller*, 19 F.3d at 456 (quoting *Senate of California v. Mos-*

*bacher,* 968 F.2d 974, 977 (9th Cir.1992)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Odessa Union,* 833 F.2d at 174.

The standard is modified somewhat when the federal government seeks to enforce a statute:

In statutory enforcement cases where the government has met the "probability of success prong" of the preliminary injunction test, we presume it has met the "possibility of irreparable injury" prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public. Therefore, further inquiry into irreparable injury is unnecessary. However, in statutory enforcement cases where the government can make only a "colorable evidentiary showing" of a violation, the court must consider the possibility of irreparable injury.

*United States v. Nutri-cology, Inc.,* 982 F.2d 394, 398 (9th Cir.1992). Since this is an action by the federal government to enforce a statute, the injunction must be granted if the federal government establishes a probability of success on the merits since, in such cases, the possibility of irreparable harm is presumed.

Defendants argue that the Ninth Circuit has suggested that if the defendants do not concede a statutory violation, the presumption of irreparable harm does not apply. *See Miller,* 19 F.3d at 459 (noting that in *Odessa Union* "the traditional requirement of irreparable injury was inapplicable because the parties conceded that the federal statute involved was violated"). *Miller,* however, specifically held that the presumption applies if the defendant concedes the statutory violation *or* the government demonstrates "that it is likely to prevail on the merits." *Id.* at 460.

Defendants also contend that the presumption of irreparable harm, even if it may apply, is rebuttable. In *Miller* and *Nutri-cology,* however, the Ninth Circuit held that if the government establishes a likelihood of success on the merits, "further inquiry into irreparable harm is unnecessary." *Miller,* 19 F.3d at 459; *Nutri-cology,* 982 F.2d at 398.

Such a presumption is not unique to government statutory enforcement actions. In copyright actions, the party claiming infringement enjoys a similar presumption of irreparable harm upon a showing of likelihood of success on the merits. *See, e.g., Apple Computer v. Formula Int'l Inc.,* 725 F.2d 521, 525 (9th Cir.1984).

Thus, before deciding whether the presumption of irreparable injury applies in these cases, the Court must determine if the federal government has established a probability of success on the merits, or only a colorable evidentiary showing, or neither.

### C. *Probability of Success on the Merits.*

Federal law prohibits the knowing or intentional manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance. *See* 21 U.S.C. § 841(a). It is undisputed that marijuana is a controlled substance within the meaning of § 841(a). It is equally undisputed that defendants distribute marijuana. Defendants do not challenge the federal government's evidence to the extent it establishes that defendants provide marijuana to seriously ill patients or their primary caregivers for personal use by the patient upon a physician's recommendation.

Defendants contend that the federal government has nonetheless not established a probability of success on the merits because it has not proved that federal law applies to defendants' conduct. In particular, defendants submit that (1) federal law applies only to illicit or illegal distribution of marijuana, and not to medical marijuana which is legal under state law; (2) defendants are "joint users" and therefore cannot be guilty of "distribution"; and (3) defendants are exempt from the law as "ultimate users." Defendants argue alternatively that even if the law applies to their conduct, the common law defense of necessity justifies their conduct and, in any event, the statute as applied violates substantive due process.

#### 1. Whether Federal Law Reaches Defendants' Conduct.

##### a. *Proposition 215 and Federal Law.*

Section 903 of the Controlled Substances Act provides that no provision of the Act

shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Defendants argue that this section places the burden on the federal government to prove that state law, Health and Safety Code § 11362.5, is in positive conflict with federal law, 21 U.S.C. § 841(a), and that there is no way the two can stand together. The federal government cannot meet that burden, they contend, because "[i]t is unreasonable to believe that use of medical marijuana by this discrete population for this limited purpose [medical treatment] will create a significant drug problem." *Conant v. McCaffrey*, 172 F.R.D. 681, 694 n. 5 (N.D.Cal.1997).

 Defendants' argument misapprehends the scope of Proposition 215, federal law, and these lawsuits. Defendants are correct that Proposition 215 does not conflict with federal law, but not for the reasons advanced by defendants, i.e., that medical marijuana is not illegal. Proposition 215 does not conflict with federal law because on its face it does not purport to make legal any conduct prohibited by federal law; it merely exempts certain conduct by certain persons from the California drug laws. Thus, whether defendants' conduct falls within the scope of Proposition 215 is immaterial. Defendants do not argue, as they cannot, that simply because state law does not prohibit their conduct federal law may not do so. *See United States v. Rosenberg*, 515 F.2d 190, 198 n. 14 (9th Cir.1975).

 Notwithstanding the operative language of Proposition 215, its declared purpose—"[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes." "... and that such patients and their primary caregivers are not subject to criminal prosecution or sanction," Health & Safety Code § 11362.5(A) & (B)—suggests that Califor-

nia's voters want to exempt medical marijuana from prosecution under federal, as well as state law, even if that is not what they enacted. A state law which purports to legalize the distribution of marijuana for any purpose, however, even a laudable one, nonetheless directly conflicts with federal law, 21 U.S.C. § 841(a). Section 841 prohibits the distribution of marijuana except for use in an approved research project. It does not exempt the distribution of marijuana to seriously ill persons for their personal medical use.

#### b. *Joint Users Defense.*

In *United States v. Swiderski*, 548 F.2d 445 (2d Cir.1977), defendants, husband and wife, were charged with violating 21 U.S.C. § 841(a) by possessing cocaine with intent to distribute. *See id.* at 447. The Second Circuit held that "a statutory 'transfer' could not occur between two individuals in joint possession of a controlled substance simultaneously acquired for their own use." *United States v. Wright*, 593 F.2d 105, 107 (9th Cir.1979) (discussing *Swiderski*). The court thus concluded that the trial judge erred by denying "the jury the opportunity to find that the defendants, who bought the drugs in each other's physical presence, intended merely to share the drugs" and thus, not to distribute them. *Id.; Swiderski*, 548 F.2d at 450.

 Defendants contend that like the defendants in *Swiderski*, they have not violated the federal law prohibiting the distribution of marijuana. At a trial on the merits they submit that they will prove that their control of medical marijuana is established "through a cooperative enterprise, shared equally among all of the members thereto, for the exclusive medicinal use of each of them, individually" and that no third parties are involved and "nor is anyone else brought into a 'web' of drug use." They also contend that they "do not give money to others for the purposes of procuring drugs for recreational use," rather, they "act in concert as cooperatives to ensure the safe and affordable access to cannabis for medicinal purposes for each of the members." Defendants' Opposition Memorandum at 21. For purposes of the federal government's motion for preliminary

injunction, the Court will assume that defendants could produce evidence to support their offer of proof.

*Swiderski,* and the other cases cited by defendants, involved the question of whether the defendants in those actions were entitled to a "joint users" jury instruction. The issue here, however, is whether the federal government has established that it is likely to prevail at trial in establishing that *Swiderski* does not apply to defendants' conduct. The Court concludes that it has. *Swiderski* involved a simultaneous purchase by a husband and wife who testified they intended to use the controlled substance immediately. Applying *Swiderski* to a medical marijuana cooperative would extend *Swiderski* to a situation in which the controlled substance is not literally purchased simultaneously for immediate consumption. In light of the fact that *Swiderski* has never been so extended, and in light of the fact that it has not been adopted by the Ninth Circuit, the Court concludes that it is reasonably likely that such a defense would not prevail at a trial addressing whether injunctive relief should be granted.

The Court cautions, however, that it is not ruling that defendants are not entitled to such a defense at trial or in a contempt proceeding for violation of a preliminary or permanent injunction, or that defendants could not as a matter of law defeat a motion for summary judgment with evidence of mere possession. The Court's ruling is narrow. Based on defendants' offer of proof, which does not include any detailed factual allegations, the Court concludes that the federal government is likely to prevail at trial.

### c. *Ultimate User Defense.*

 Defendants contend that they have not violated the Controlled Substances Act because they are "ultimate users." An "ultimate user" is "a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household." 21 U.S.C. § 802(25). Defendants are not ultimate users because they have not lawfully obtained the marijuana at issue. As stated above, the fact that it may be lawful under state law for defendants to cultivate and possess marijuana for medical purposes, does not make it lawful under federal law—the only law at issue here. At present, the only way in which marijuana may be lawfully obtained is in a controlled research setting conducted pursuant to a FDA approved protocol, and where the researcher has been registered with the DEA. *See* 21 U.S.C. § 823(f); 21 C.F.R. § 1301.13(e).

### 2. The Medical Necessity Defense.

 Defendants argue that even if the Controlled Substances Act prohibits their conduct, the injunction must nevertheless be denied because they are entitled to the common law defense of necessity. To invoke the defense, defendants must prove (1) that they were faced with a choice of evils and chose the lesser evil; (2) they acted to prevent imminent harm; (3) they reasonably anticipated a direct causal relationship between their conduct and the harm to be averted; and (4) that there were no legal alternatives to violating the law. *See United States v. Aguilar,* 883 F.2d 662, 693 (9th Cir.1989). Several state courts have recognized the applicability of the necessity defense in marijuana criminal prosecutions. *See, e.g., State v. Hastings,* 118 Idaho 854, 801 P.2d 563 (1990); *State v. Diana,* 24 Wash.App. 908, 604 P.2d 1312 (1979); *State v. Bachman,* 61 Haw. 71, 595 P.2d 287 (1979).

Defendants submit that they can prove each element of the defense. First, their members will die, go blind, or suffer severe pain without cannabis; yet, obtaining cannabis "is, for many difficult or impossible to obtain." Thus, defendants contend, they are faced with two evils, letting their members die, go blind or suffer severe pain, or risk running afoul of federal law and that they have chosen the lesser evil. They can meet the second and third requirements, they argue, because the harm to be averted is imminent and life-threatening and supplying cannabis to their members is necessary to prevent that harm. Finally, they assert they have no reasonable alternative; for many people legal drugs simply do not work in treating their symptoms and they have no legal or safe alternative to obtaining marijuana.

The federal government responds that defendants do have a legal and reasonable alternative—a petition to reschedule marijuana from a Schedule I to a Schedule II controlled substance. *See* 21 U.S.C. § 811(a). Rescheduling to Schedule II would permit physicians to prescribe marijuana for therapeutic purposes. The Court doubts whether a rescheduling petition is a reasonable alternative for all seriously ill patients whose physicians have recommended marijuana for therapeutic purposes. For example, such a petition was filed in 1972 and did not receive a final ruling from the Administrator of the Drug Enforcement Agency until 1992, and a final decision on appeal until 1994. *See Alliance for Cannabis Therapeutics v. Drug Enforcement Administrator*, 15 F.3d 1131 (D.C.Cir.1994). Needless to say, it hardly seems reasonable to require an AIDS, glaucoma, or cancer patient to wait twenty years if the patient requires marijuana to alleviate a current medical problem.

The Court, however, need not dispositively decide whether a reasonable alternative exists. The Court concludes that the federal government is likely to prevail at trial on its claim that the defense of necessity does not preclude the granting of the injunctive relief sought here. As the federal government points out, the defense of necessity has never been allowed to exempt a defendant from the criminal laws on a blanket basis. To put it another way, for the defense to be available here, defendants would have to prove that each and every patient to whom it provides cannabis is in danger of imminent harm; that the cannabis will alleviate the harm for that particular patient; and that the patient had no other alternatives, for example, that no other legal drug could have reasonably averted the harm. Defendants do not contend that they could offer such proof. For example, they state that they could offer evidence that "for many" people, legal drugs are not effective. That is not the same as saying that for each of every person to whom they provide, and will provide, marijuana, legal drugs are not effective such that marijuana is a necessity.

The Court is not ruling, however, that the defense of necessity is wholly inapplicable to these lawsuits. If a preliminary or permanent injunction is granted, and the federal government alleges that defendants have violated the injunction, there will be specific facts and circumstances before the Court from which the Court can determine if the jury should be given a necessity instruction as a defense to the alleged violation of the injunction. As such facts are not presently before the Court, it is premature for the Court to decide whether such a defense is available.

By concluding that medical necessity is not an appropriate defense to the issuance of an injunction, the Court is not placing defendants in the difficult position of deciding whether to go forward with their conduct, which they sincerely believe is absolutely necessary, or abiding by the injunction. As defendants point out, with or without the injunction they must decide whether to violate federal law; they are bound by federal law even in the absence of an injunction.

### 3. Substantive Due Process.

▇▇▇ The Due Process Clause of the United States Constitution "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, — U.S. —, —, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997). Where a "fundamental liberty interest" is involved, government action restricting that interest must be "narrowly tailored to serve a compelling [federal government] interest." *Id.* 117 S.Ct. at 2268; *see also id.* ("the Fourteenth Amendment 'forbids the government to infringe ... "fundamental" liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest'" (citation omitted)). A fundamental liberty interest must be " 'deeply rooted in this Nation's history and tradition,'" and " 'implicit in our concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* (citation omitted). The right must also be "carefully described." *Id.*

▇▇▇ Defendants contend that the preliminary injunction should be denied because the

relief sought—an order enjoining defendants from the manufacture or distribution, or possession with intent to distribute marijuana, or conspiring to do the same—violates their substantive due process rights. In particular, defendants assert that such an injunction would infringe their fundamental right to be free from unnecessary pain, to receive palliative treatment for a painful medical condition, to care for oneself, and to preserve one's own life. *See generally Washington v. Glucksberg,* —— U.S. ——, 117 S.Ct. 2258, 138 L.Ed.2d 772; *DeShaney v. Winnebago Cty. Dept. of Social Serv.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). They argue that they are not asserting a constitutional right to the medical drug of their choice, even if the drug had not been proved effective, as was the case in the actions challenging federal government's restrictions on laetrile, *see, e.g., Rutherford v. United States,* 616 F.2d 455 (10th Cir.1980); *Carnohan v. United States,* 616 F.2d 1120 (9th Cir.1980), but rather that they have a right to "a demonstrated and effective treatment as recommended by their physician that can alleviate their agony, preserve their sight, and save their lives." Defendants' Supplemental Opposition Memorandum at 9.

The Court concludes that the federal government is likely to prevail at trial on the issue of whether defendants have a fundamental right to medical marijuana. The Court, however, is not ruling as a matter of law that no such right exists. It holds that on the record presently before the Court, defendants have not established that the right to such treatment is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Washington v. Glucksberg,* —— U.S. at ——, 117 S.Ct. at 2268 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Nor have defendants established that they have standing to assert such a defense as to their distribution of marijuana to seriously ill persons other than themselves.

■ Moreover, the Court need not dispositively resolve this constitutional issue because even assuming defendants had established that such a fundamental right exists, and that they have standing to assert such a

right, this defense, like the defense of necessity, is inapplicable to this injunction action. Defendants are asking the Court to deny the injunction and, in effect, exempt their conduct from the federal laws as a whole. In order for the Court to conclude that defendants have a substantive due process defense to an injunction barring them from violating federal law, the Court would have to find that the substantive due process right of each and every patient to whom the defendants will dispense marijuana in the future will be violated if the government prevents defendants from doing so. Such a defense may be available in a contempt proceeding where the trier of fact is presented with a particular transaction to a particular patient under a particular set of facts. *See Washington v. Glucksberg,* —— U.S. at —— n. 24, 117 S.Ct. at 2275 n. 24 (holding that Washington State's ban on assisted suicide is not unconstitutional as applied to terminally ill patients generally, but that the Court's decision does not "foreclose the possibility that an individual plaintiff seeking to hasten her death, or a doctor whose assistance was sought, could prevail in a more particularized challenge"). It is not available, however, to exempt generally the distribution of medical marijuana from the federal drug laws.

### D. *Whether the Preliminary Injunction Should Be Granted.*

For the foregoing reasons, the Court concludes that the federal government has established that it is likely to prevail on the merits of its claim that defendants are in violation of federal law. As set forth above, in a statutory enforcement action brought by the federal government, irreparable harm is presumed if the government establishes that it is likely to prevail on the merits. *Nutricology,* 982 F.2d at 398 ("further inquiry into irreparable injury is unnecessary"); *see also id.* ("the passage of the statute is itself an implied finding by Congress that violations will harm the public").

Defendants argue that injunctive relief is nonetheless unwarranted because this Court is sitting as a court of equity and must therefore consider the traditional defenses to the granting of equitable relief, including the

unclean hands of the moving party. They contend that these principles, plus the fact that the federal government is seeking injunctive relief at all, require the denial of injunctive relief.

### 1. The Propriety of Seeking Injunctive Relief.

■ The government rarely seeks injunctions pursuant to 21 U.S.C. § 882(a). The Court has located only five published opinions in which the federal government sought relief based on the statute. *See, e.g., United States v. Leasehold Interest in 121 Nostrand Avenue,* 760 F.Supp. 1015, 1035 (E.D.N.Y. 1991); *United States v. Williams,* 416 F.Supp. 611, 614 (D.D.C.1976). At oral argument, and in their supplemental memoranda, defendants insist that the federal government has chosen to bring a civil injunctive action rather than charge defendants with a violation of the criminal laws, in order to deprive defendants of the same right to a jury trial to which they would be entitled in a criminal action.

Defendants do not contend that the government is attempting to deprive them of a right to a jury in general. 21 U.S.C. § 882(b) provides that "[i]n case of an alleged violation of an injunction or restraining order issued under this section, trial shall, *upon demand of the accused,* be by a *jury* in accordance with the Federal Rules of Civil Procedure." 21 U.S.C. § 882(b) (emphasis added). If the Court issues an injunction, defendants have a right to a jury in any proceeding in which it is alleged that they have violated the injunction. Defendants instead contend that a jury trial in accordance with the Federal Rules of Civil Procedure will provide them with fewer procedural protections than a criminal trial. For example, in civil proceedings a party may make a motion for summary judgment; no such procedure, however, is available in a criminal trial; and in a civil proceeding, under Federal Rule of Civil Procedure 48, a jury may be composed of six persons, whereas in a criminal trial a defendant is guaranteed a trial by a jury of twelve.

These procedural differences do not compel a conclusion that the federal government is acting in bad faith. First, in any contempt proceeding, the Court will determine the appropriate number of jurors, up to twelve, which still must return a unanimous verdict. *See* Fed.R.Civ.P. 48 ("[u]nless the parties otherwise stipulate, (1) the verdict shall be unanimous"). Second, even assuming that the federal government could bring a motion for summary judgment in a contempt proceeding—and it is not clear from the plain language of section 882(b) that it could—summary judgment may be granted, and a party denied the right to a jury, only if *no reasonable jury* could find for the nonmoving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### a. Unclean Hands

■ The "clean hands" doctrine insists that one who seeks equity must come to the court without blemish.... This maxim "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." ... This rule applies to the government as well as to private litigants ...

*Equal Employment Opportunity Comm'n v. Recruit U.S.A.,* 939 F.2d 746, 752 (9th Cir. 1991) (citations omitted). Defendants contend that the federal government comes before this Court with unclean hands because it refuses to acknowledge that marijuana has a medical use and reschedule it as a Schedule II controlled substance which would permit seriously ill patients to be treated with marijuana.

The federal government's conduct is "unclean," defendants assert, because the federal government itself has commissioned studies which have established marijuana's medical efficacy and then ignored these studies. Defendants highlight the fact that while the federal government continues to maintain that there are no medically accepted uses for marijuana, the DEA is simultaneously distributing marijuana to eight people under the Investigative New Drug program for medical purposes. Those eight people were enrolled years ago, defendants submit, before the

"war on drugs," and the DEA has refused to enroll any more patients, not because of concerns as to the safety of marijuana, but for political reasons. Defendants also point out that in 1970, Congress appropriated a million dollars for a commission to recommend appropriate marijuana legislation. Public Law 91–513, § 601(e) (Oct. 27, 1970). The commission, known as the "Shafer Commission," recommended decriminalizing possession and casual distribution of small amounts of marijuana. *See Marihuana: A Signal of Misunderstanding; First Report of the National Commission on Marihuana and Drug Abuse*, 152 (1972). Congress, however, refused to reschedule marijuana. Finally, defendants argue that the DEA ignored the recommendation of its own Administrative Law Judge that marijuana be changed to a Schedule II controlled substance *See* Defendants' Supplemental Opposition Memorandum at 23.

The federal government disputes that the Shafer Commission recommended decriminalizing marijuana. Rather, it contends the Commission merely recommended increased support for studies to evaluate the efficacy of medical marijuana. *See First Report, supra*, at 176.

The fact remains, however, that medical marijuana advocates have been unsuccessful in convincing the federal government decision makers that marijuana should be reclassified as a Schedule II controlled substance and thus made available to seriously ill patients upon a physician's recommendation. That does not mean that the federal government has acted with unclean hands. Indeed, as late as 1994, a federal court of appeal affirmed the Drug Enforcement Agency Administrator's decision not to reschedule. *See Alliance for Cannabis Therapeutics v. Drug Enforcement Administration*, 15 F.3d 1131 (D.C.Cir.1994).

The federal government has advised the Court that a petition for reclassification has been filed and that on December 17, 1997, the DEA referred the petition to the Secretary of Health and Human Services ("HHS") upon determining that the petition raised scientific and medical issues that had not previously been evaluated by HHS as part of

any prior scheduling action. *See* Federal Government's Post–Hearing Memorandum at 13. One would expect the Secretary to act expeditiously on the petition in light of the expressed concerns of the citizens of California.

## CONCLUSION

Because of the Supremacy Clause of the United States Constitution, the only issue before the Court is whether defendants' conduct violates federal law. The Court concludes that the federal government has established that it is likely that it does. As these lawsuits are brought to enforce a statute, namely, the Controlled Substances Act, irreparable harm is presumed and the injunction must be granted.

Once again, however, the Court must caution as to what this decision does not do. The Court has not declared Proposition 215 unconstitutional. Nor has it enjoined the possession of marijuana by a seriously ill patient for the patient's personal medical use upon a physician's recommendation. Nor has the Court foreclosed the possibility of a medical necessity or constitutional defense in any proceeding in which it is alleged a defendant has violated the injunction issued herein.

Finally, the San Francisco District Attorney has raised the issue of possible local governmental distribution of medical marijuana. Such a question is not before the Court and, in any event, is purely speculative as it is uncertain whether the federal government would even seek to enjoin such conduct by a local government entity under strictly controlled conditions. For example, as the San Francisco District Attorney mentioned at oral argument, the distribution of clean needles to heroin addicts violates federal law, *see* 21 U.S.C. § 863, yet the federal government has not filed suit to enjoin the City and County of San Francisco's distribution of such needles. Indeed, HHS recently stated that community programs promoting the distribution of clean needles reduces the spread of AIDS and does not encourage drug use. *See* Health and Human Services Press Release, *"Research Shows Needle Exchange Programs Reduce HIV Infections Without*

*Increasing Drug Use"* (April 20, 1998). From this publicly stated position, one could conclude that the federal government will not enforce the drug paraphernalia statute in light of local community efforts to prevent the spread of AIDS. The Court recognizes that local governmental distribution of medical marijuana to seriously ill patients raises political issues which may not require judicial intervention.

Attached to this Memorandum and Order is a proposed form of preliminary injunction in 98–00085. The injunction in each case will be identical except for the name of the defendants and the location of the dispensary. The parties are directed to file a written submission with this Court by 5:00 p.m. on Monday, May 18, 1998 as to the form of the order. The Court will issue the preliminary injunction shortly thereafter.

**IT IS SO ORDERED.**

### [PROPOSED] ORDER

For the reasons stated in its Memorandum and Order dated May 13, 1998, is hereby ORDERED as follows:

1. Defendants Cannabis Cultivators Club and Dennis Peron are hereby preliminarily enjoined, pending further order of the Court, from engaging in the manufacture or distribution of marijuana, or the possession of marijuana with the intent to manufacture and distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and

2. Defendants Cannabis Cultivators Club and Dennis Peron are hereby preliminarily enjoined from using the premises of 1444 Market Street, San Francisco, California for the purposes of engaging in the manufacture and distribution of marijuana; and

3. Defendant Dennis Peron is hereby preliminarily enjoined from conspiring to violate the Controlled Substances Act, 21 U.S.C. § 841(a)(1) with respect to the manufacture or distribution of marijuana, or the possession of marijuana with the intent to manufacture and distribute marijuana.

4. It shall not be a violation of this injunction for defendant Dennis Peron to seek and obtain legal advice from his attorneys.

**IT IS SO ORDERED.**