[No. A080515. First Dist., Div. Five. Aug. 17, 1998.]

PILKINGTON BARNES HIND, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
JOHN J. VISBAL, Real Party in Interest.

COUNSEL

Wise & Shepard, M. Scott Donahey, Michelle E. Lentzner and Heidi A. Quinn for Petitioner.

No appearance for Respondent.

Robert De Vries and Carolyn Gold for Real Party in Interest.

OPINION

**PETERSON, P. J.**—Petitioner Pilkington Barnes Hind (PBH), a firm which manufactures and markets contact lenses, hired real party in interest John J. Visbal as a managerial employee on the condition that he take and pass a drug test. The test was supposed to be administered prior to commencement of employment, but was not administered until a few days after Visbal was placed on the payroll. Visbal failed the drug test and was terminated. He then sued PBH for wrongful discharge, alleging that the postemployment drug test was in violation of public policy and the right to privacy. PBH filed a motion for summary judgment, arguing that Visbal was still a job applicant within the meaning of *Loder* v. *City of Glendale* (1997) 14 Cal.4th 846 [59 Cal.Rptr.2d 696, 927 P.2d 1200] (*Loder*), under which drug testing without individualized suspicion for job applicants, but not current employees, is constitutionally permissible. The superior court denied the motion. PBH seeks a writ of mandate to compel the superior court to grant the motion and enter summary judgment in its favor. After ordering opposition and hearing oral argument, we grant the requested writ.

I. PROCEDURAL BACKGROUND AND FACTS

The following facts are essentially undisputed.

Visbal accepted a conditional offer of employment with PBH May 23, 1995. The offer was specifically conditioned on passing a drug test. Visbal was due to relocate from San Francisco to commence employment in San Diego, and was slated to arrive in the latter city on June 5. He was supposed to have completed the drug test with his own physician *before* he left San Francisco, prior to his commencing employment in San Diego. Visbal did not complete the drug test before leaving San Francisco, because his doctor was unable to schedule the test before Visbal's departure.

PBH asked Visbal to take the drug test on June 5, the day he arrived in San Diego. Visbal asked to postpone the test until June 8, to enable him and

his family to go house-hunting. Visbal spent June 5 through June 8 looking for a house, only briefly reporting to PBH on June 6 for a short session of filling out paperwork. Visbal took the test on June 8; on June 14, the testing clinic reported to PBH that he had tested positive for marijuana. When confronted, Visbal gave inconsistent justifications for the positive test. Initially, he essentially admitted smoking marijuana at a party on May 5 and was surprised that he would still test positive after 30 days.[1] Then, Visbal blamed the positive marijuana test on "second hand" marijuana smoke.

Because Visbal had not satisfied the condition of the offer of employment that he pass a drug test, PBH withdrew its offer. Visbal filed the instant action for wrongful termination. PBH moved for summary judgment, relying on *Loder*'s holding that prospective employment applicants may be required to submit to a drug test without any individualized suspicion of drug abuse. (14 Cal.4th at pp. 886-887, 897-898.) Visbal responded that because he had already begun employment, he was an employee; and thus, *Loder* would ban any drug test in the absence of individualized suspicion. PBH conceded for purposes of the summary judgment motion that the drug test occurred postemployment. However, PBH argued that under these facts, Visbal remained an "applicant" for testing purposes within the meaning of *Loder*. The superior court denied PBH's motion.[2]

This petition followed.

## II. DISCUSSION

■ This case turns on the narrow issue of whether Visbal was an applicant or an employee within the meaning of *Loder* when he submitted to the drug test, in the absence of individualized suspicion that he abused drugs, a few days after he concededly was placed on PBH's payroll. We conclude that for purposes of *Loder*, Visbal was still an applicant and the test was constitutionally permissible.[3]

In ruling that a job applicant may be required to undergo a drug test as a condition of employment, *Loder* distinguished the applicant from the current employee for purposes of the employer's legitimate interest in suspicionless testing. With regard to an employee, an employer searching for the telltale

[1]In his deposition, Visbal admitted smoking marijuana at a party on May 5 or May 6. He also admitted smoking marijuana on his "personal time" during previous employment.

[2]The superior court found a triable issue of material fact as to whether Visbal was an employee of PBH at the time the drug test was administered. This is a truly puzzling ruling, since PBH *conceded* that the test was postemployment.

[3]Thus, we do not reach PBH's fallback contention that Visbal was an at-will employee and could have been terminated at any time with or without cause.

signs of drug abuse "can observe the employee at work, evaluate his or her work product and safety record, and check employment records to determine whether the employee has been excessively absent or late." (14 Cal.4th at p. 883.) Thus, "an employer generally need not resort to suspicionless drug testing to determine whether a current employee is likely to be absent from work or less productive or effective as a result of current drug . . . abuse . . . ." (*Ibid.*)

By contrast, "When deciding whether to hire a job applicant, . . . an employer has not had a similar opportunity to observe the applicant over a period of time. . . . [A]n employer reasonably may lack total confidence in the reliability of information supplied by a former employer or other references. And although an employer will, of course, obtain the opportunity to make its own observations after it has hired the applicant, the hiring of a new employee frequently represents a considerable investment on the part of an employer, often involving the training of the new employee." (*Loder, supra,* 14 Cal.4th at p. 883.) "[W]e believe that an employer has a greater need for, and interest in, conducting suspicionless drug testing of job applicants than it does in conducting such testing of current employees. [Citation.]" (*Ibid.*)

While conceding Visbal was already an employee on the date of the drug test, PBH argues that for purposes of suspicionless testing, he was still a job applicant within the meaning of *Loder.* We agree. Visbal was supposed to take the drug test prior to leaving San Francisco and starting his employment with PBH in San Diego. The test was delayed through no fault of PBH. Visbal was supposed to take the test the day he arrived in San Diego, prior to starting work. The test was delayed at Visbal's request in order to accommodate his stated need for time to house-hunt. The test was finally administered four days after Visbal went on the payroll, but before he performed any work—his sole acts while employed consisted of filling out new-employee paperwork and seeking an appropriate abode.

Visbal was essentially an applicant for purposes of *Loder.* PBH could not study Visbal's job performance, safety record, absenteeism, and the like to gather grounds for a reasonable suspicion of drug abuse. "[B]ecause an employer normally has had no opportunity to observe a job applicant over a period of time under circumstances that reasonably might alert the employer to a potential drug . . . problem, the employer has a greater need" to conduct suspicionless testing. (14 Cal.4th at p. 897.)

In urging us to deny PBH's petition, Visbal argues that the brief time he spent in PBH's employ was sufficient for PBH to observe symptoms of drug abuse. We do not think the *Loder* language and the realities of the workplace

contemplate that drug abuse can be spotted by observing an employee in a span of four days, especially when most of the time is spent away from the office searching for suitable real estate. We find this argument devoid of merit.

Visbal also relies on other language in the *Loder* opinion. After expounding on the ability of the employer to observe a current employee's behavior as the crucial distinction between employee and applicant, the *Loder* court also observed that suspicionless testing was permissible for the applicant in part because "once an applicant is hired, any attempt by the employer to dismiss the employee generally will entail additional expenses. . . ." (14 Cal.4th at p. 883.) Visbal argues this language should be interpreted to mean that at the precise moment of hiring, the applicant becomes an employee for testing purposes despite any factual scenarios like the one in this case. We decline to read *Loder* to impose such a rigid scheme.[4]

Visbal also contends the drug test and his resultant termination were in violation of his constitutional right to privacy. He tells us that "his off-hour marijuana use, if any, had no impact on the legitimate interests of his employer," and claims that "possessing and using . . . is less serious than speeding [or] parking in a bus zone . . . ." Smoking marijuana is not, as Visbal urges, a matter of constitutional privilege; and from an employer's perspective, a job applicant who uses marijuana is far more potentially dangerous to the safety and stability of the workplace than an applicant who engages in the far less serious, although equally self-centered, conduct of parking a car in a zone reserved for buses.

---

[4]We reject Visbal's contention, raised in opposition to the summary judgment motion and the present petition, that his termination was a breach of his employment contract because it violated PBH's "Employee Assistance Program." The program was described in a brochure Visbal received in his new-employee paperwork, and could arguably be considered part of his employment contract. (See *Scott* v. *Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 463 [46 Cal.Rptr.2d 427, 904 P.2d 834].) The program outlines a treatment for, not termination of, employees with drug abuse problems. However, the program is for employees, not applicants. For purposes of drug testing to screen new hires for drugs, Visbal must be considered an applicant, and the program cannot apply to him.

In his return to the order to show cause, Visbal relies on *Chandler* v. *Miller* (1997) 520 U.S. __ [117 S.Ct. 1295, 137 L.Ed.2d 513]. Nothing in that decision affects our result. In *Loder*, the California Supreme Court interpreted a triumvirate of federal cases governing suspicionless drug testing: *Vernonia School Dist. 47J* v. *Acton* (1995) 515 U.S. 646 [115 S.Ct. 2386, 132 L.Ed.2d 564]; *Treasury Employees* v. *Von Raab* (1989) 489 U.S. 656 [109 S.Ct. 1384, 103 L.Ed.2d 685]; and *Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602 [109 S.Ct. 1402, 103 L.Ed.2d 639]. In *Chandler*, the United States Supreme Court interpreted those three cases to find unconstitutional suspicionless drug testing for candidates to high political office in Georgia. Nothing in *Chandler*'s analysis speaks to the suspicionless testing by an employer of a job applicant. In any case, we remain bound by *Loder* until the Supreme Court of this state says otherwise.

■ We hold that a job applicant, who requests and receives a delay in submitting to the preemployment drug test permitted by *Loder* until after the start of employment, may not evade the employer's testing requirement postemployment on the ground the applicant thereby became an "employee" and is, consequently, immune from such testing. In such circumstances, and for purposes of suspicionless drug testing, the job applicant who caused the drug testing delay must submit to such testing after the employment date. If the "employee" fails the test given in the brief period between employment and administration of the test, that employment, conditioned on passing the test which the "employee" delayed, may be terminated.

■ The superior court abused its discretion in failing to grant PBH's motion for summary judgment, by converting a concession of postemployment drug testing into a triable issue of fact while failing to address the issue of whether Visbal, under the facts of this case, remained a job applicant for purposes of such testing.

III. DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order denying PBH's motion for summary judgment, and to enter a new and different order granting that motion. The stay of proceedings heretofore imposed shall dissolve upon the finality of this opinion as to this court. PBH shall recover its costs of this writ proceeding.

Haning, J., and Jones, J., concurred.

A petition for a rehearing was denied September 9, 1998.