33 Cal.Rptr.3d 803 (2005)
Gary ROSS, Plaintiff and Appellant,
v.
RAGINGWIRE TELECOMMUNICATIONS, INC., Defendant and Respondent.
No. C043392.
Court of Appeal, Third District.
September 7, 2005.
*804 Law Office of Stewart Katz, Stewart Katz and Costa Kerestenzis, Sacramento, for Plaintiff and Appellant.
Jackson Lewis, D. Gregory Valenza, San Francisco, and Marlena G. Gibbons, for Defendant and Respondent.
*805 SCOTLAND, P.J.
In accordance with the Compassionate Use Act of 1996, plaintiff Gary Ross had a physician's recommendation to use marijuana for his chronic back pain. (Health & Saf. Code, § 11362.5 (hereafter the Compassionate Use Act or § 11362.5.)) Nevertheless, when plaintiff's employer, Ragingwire Telecommunications, Inc. (defendant), learned plaintiff had tested positive for marijuana during a preemployment drug test, it discharged him from the position that he had held for eight days.
Plaintiff sued defendant for wrongful termination, employment discrimination, and breach of contract. Judgment was entered against plaintiff after defendant demurred successfully to his complaint.
On appeal, plaintiff contends the trial court erred in ruling that because his use of marijuana violated federal criminal statutes, defendant was justified as a matter of law in terminating plaintiff's employment even if his conduct did not violate state criminal laws due to the Compassionate Use Act. In plaintiff's view, defendant's action violated the Fair Employment and Housing Act (FEHA) and constituted a wrongful termination in violation of public policy.
We shall affirm the judgment. As we will explain, employers have legitimate interests in not employing persons who use illegal drugs. As recognized by the California Supreme Court, such use has resulted in, among other things, increased absenteeism from work, diminished productivity, greater health costs, and increased problems with respect to safety in the workplace. Nothing in FEHA precludes an employer from firing, or refusing to hire, a person who uses an illegal drug. Because the possession and use of marijuana is illegal under federal law, a court has no legitimate authority to require an employer to accommodate an employee's use of marijuana, even if it is for medicinal purposes and thus legal under California law. If FEHA is to be extended to compel such an accommodation, that is a public policy decision that must be made by the Legislature, or by the electorate via initiative, and not by the courts. Contrary to plaintiff's claim, permitting employers to fire, or refuse to hire, a person who exercises his or her statutory right under California law to use marijuana for medicinal purposes does not violate state policy created by the Compassionate Use Act. That initiative simply permits a person to use marijuana for medicinal purposes in our state without incurring state criminal law sanctions. The initiative says nothing about protecting the employment rights of those who do so. For a court to insert something that is missing from the statute would be impermissible judicial legislation. If the omission is a flaw in statutory scheme, it is up to the Legislature or the electorate, not the courts, to fix it.

FACTS
The complaint against defendant contains the following allegations.
Plaintiff is a qualified individual with a disability as defined by the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) He has suffered from a lower back strain and muscle spasms since January 1983, as the result of injuries that he sustained during his service with the United States Air Force, for which he receives disability benefits. After plaintiff failed to obtain relief from muscle relaxants and traditional pain medications, his physician gave him a recommendation to use marijuana in accordance with section 11362.5. Plaintiff has used marijuana since September 1999.
*806 In September 2001, defendant offered plaintiff a position as a lead systems administrator. Defendant, a corporation providing information technology infrastructure to businesses, gave plaintiff two compensation options: (1) a higher base salary and benefits, with fewer stock options, or (2) a significantly lower base salary and benefits, with greater stock options when benefits vested in three years. Plaintiff accepted the latter offer.
Defendant required plaintiff to take a preemployment drug test. Before taking the test, plaintiff gave to the clinic administering the test a copy of his physician's written recommendation regarding using marijuana for medicinal purposes.
Plaintiff began working for defendant on September 17, 2001, a few days after taking the drug test. Plaintiff then got a call from the clinic, advising him that he had tested positive for Tetrahydrocannabinol (THC), the main chemical found in marijuana.
On September 20, 2001, defendant informed plaintiff that he was being suspended as a result of the drug test results. Plaintiff gave defendant a copy of his physician's recommendation and explained that he used marijuana to relieve chronic back pain. Defendant told plaintiff that it would verify the validity of the physician's recommendation, and that it then would advise plaintiff of its decision regarding whether to allow him to continue working.
Defendant terminated plaintiff's employment on September 25, 2001, because of his use of marijuana.
According to the allegations in plaintiff's complaint, his disability and use of marijuana do not affect his ability to perform the essential functions of the job. Since he began taking marijuana for medicinal purposes, he has worked in the same field as the job offered by defendant and has performed satisfactorily, without any complaints about his job performance.
Plaintiff alleges that defendant's action in firing him because of his use of marijuana as medicine for his disability, and its failure to provide him with reasonable accommodation for his disability, violated FEHA and constituted a wrongful discharge in violation of public policy. He also alleges that the structure of the job offer, including the lesser salary with greater stock options after a three-year vesting period, as well as defendant's policies, practices, and statements, created an implied in fact contract that plaintiff would not be terminated without just cause, which defendant breached when it fired him for using marijuana as authorized by the Compassionate Use Act.[1]
Defendant demurred to plaintiff's complaint on the ground that marijuana is an illegal controlled substance under federal law and nothing in the Compassionate Use Act requires employers to ignore this prohibition and employ persons who test positive for using marijuana. According to defendant, refusing to accommodate such illegal conduct does not violate FEHA or public policy. Defendant also asserted that plaintiff was an at-will employee, but even if there was an implied contract to discharge plaintiff only for cause, his illegal drug use was good cause. Thus, the complaint failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)
Plaintiff opposed the demurrer, asserting that the Compassionate Use Act rendered his drug use legal and, thus, it was a *807 violation of FEHA to discharge him rather than to accommodate his use of legal medication necessary to treat his disability. He also argued that firing him for using a legal medication violated the public policy set forth in the Compassionate Use Act, and that the parties had an implied contract, which limited defendant's ability to discharge plaintiff without cause.
After noting the parties agreed that the dispositive issue was whether plaintiff's use of marijuana is an illegal activity, the trial court held that because the conduct violated federal law, it was unlawful even if the use of marijuana for medicinal purposes does not violate state criminal laws due to the Compassionate Use Act. Accordingly, the court sustained the demurrer and entered judgment in favor of defendant.

DISCUSSION

I
In an appeal from a judgment of dismissal entered after a demurrer is sustained, the demurrer is treated as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58; Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 879, 6 Cal.Rptr.2d 151) Properly pleaded allegations of material facts, together with facts that may be judicially noticed, are accepted as true. (Blank v. Kirwan, supra, 39 Cal.3d at p. 318, 216 Cal.Rptr. 718, 703 P.2d 58; Platt v. Coldwell Banker Residential Real Estate Services (1990) 217 Cal.App.3d 1439, 1444, 266 Cal.Rptr. 601.)
Accordingly, we presume that plaintiff suffers from disabling back pain, that he needs to use marijuana to treat his pain, that he is able to perform the essential functions of the job if his employer accommodates him by permitting him to use marijuana, and that he has a valid doctor's recommendation for the use of marijuana in compliance with the requirements of the Compassionate Use Act.
The question on appeal is this. If an employer discharges an employee for using marijuana, even though it is being used for medicinal reasons in accordance with the Compassionate Use Act, does the discharge violate FEHA, public policy, or an implied contract not to terminate the employee except for just cause?

II
The trial court determined that plaintiff could not state a cause of action under FEHA because defendant did not discharge plaintiff due to his disability, but because his preemployment drug test disclosed that he was using an illegal drug, marijuana.
Under FEHA, an employer may not discriminate against an employee based on the employee's physical condition or disability. (Finegan v. County of Los Angeles (2001) 91 Cal.App.4th 1, 7, 109 Cal.Rptr.2d 762; Gov.Code, § 12940, subd. (a).)[2] However, "nothing in the FEHA, or *808 any other California statute, purports to prohibit, or place general limitations upon, employer-mandated drug testing." (Loder v. City of Glendale (1997) 14 Cal.4th 846, 865, 59 Cal.Rptr.2d 696, 927 P.2d 1200.)
Hiring of a new employee frequently represents a considerable investment on the part of the employer. Therefore, "[i]n light of the well-documented problems that are associated with the abuse of drugs and alcohol by employeesincreased absenteeism, diminished productivity, greater health costs, increased safety problems and potential liability to third parties, and more frequent turnoveran employer, private or public, clearly has a legitimate (i.e., constitutionally permissible) interest in ascertaining whether persons to be employed in any position currently are abusing drugs or alcohol." (Loder v. City of Glendale, supra, 14 Cal.4th at pp. 882-883, 59 Cal.Rptr.2d 696, 927 P.2d 1200, fns. omitted.)
Accordingly, an employer lawfully may refuse to employ a person who fails a drug test that is a precondition of employment, even if the person has begun to work for the employer prior to taking the drug test. (Pilkington Barnes Hind v. Superior Court (1998) 66 Cal.App.4th 28, 31-34, 77 Cal.Rptr.2d 596.)
In addition, an employer need not accommodate a disability by allowing an employee to use illegal drugs. FEHA, like the Americans With Disabilities Act (ADA), requires only reasonable accommodation of an employee's disability. (Gov.Code, §§ 12926, 12940, subd. (m); Cal.Code Regs., tit. 2, § 7293.9; US Airways, Inc. v. Barnett (2002) 535 U.S. 391, 401, 122 S.Ct. 1516, 1523, 152 L.Ed.2d 589, 602 [the ADA may require affirmative conduct to promote the entry of disabled people into the work force, but does not demand action beyond the realm of the reasonable].) It is not reasonable to require an employer to accommodate a disability by allowing an employee's drug use when such use is illegal. (See, e.g., 42 U.S.C. § 12114(a) ["the term `qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use"].)
Here, plaintiff began working for defendant after he took the preemployment drug test, but before defendant received the test results. If plaintiff's drug use is illegal, then defendant was justified in revoking its job offer and terminating his employment. (Pilkington Barnes Hind v. Superior Court, supra, 66 Cal.App.4th at p. 34, 77 Cal.Rptr.2d 596; cf. Pernice v. City of Chicago (7th Cir.2001) 237 F.3d 783, 785 [an employer does not run afoul of the ADA by discharging an employee for the violation of valid work *809 rules applicable to all employees, such as a prohibition against the use of illegal drugs, even if the employee's violation occurred under the influence of a disability][3].)
Thus, as the trial court correctly stated, the dispositive issue is whether plaintiff's use of marijuana is illegal.
Relying primarily on the Compassionate Use Act, plaintiff argues that because possessing and using marijuana for medicinal purposes is not illegal under California law, defendant was prohibited from discharging him based on his use of marijuana with a physician's approval. In plaintiff's view, because his use of marijuana is necessary to alleviate the pain caused by his disability, defendant was required by FEHA to permit him to use the drug as a reasonable accommodation. (Citing Gov.Code, § 12940.) It follows, he claims, that firing him for legally using marijuana for medicinal purposes violates FEHA. We disagree.
The Compassionate Use Act provides that certain criminal statutes prohibiting the possession and cultivation of marijuana (Health & Saf.Code, §§ 11357, 11358) shall not apply to a patient, or to the patient's primary caregiver, "who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)[4] Its purpose is to ensure that seriously ill Californians have the right to obtain and use marijuana under the medical circumstances specified in the Compassionate Use Act, and to ensure that those using marijuana in accordance with the act are not subject to criminal prosecution or sanction. (§ 11362.5, subd. (b)(1)(A), (B).)
"[W]ithin its scope, section 11362.5[, subdivision] (d) renders possession and cultivation of marijuana noncriminalthat is to say, it renders possession and cultivation of the marijuana noncriminal for a qualified *810 patient or primary caregiver." (People v. Mower (2002) 28 Cal.4th 457, 471, 122 Cal.Rptr.2d 326, 49 P.3d 1067.) In other words, so long as the conditions specified in section 11362.5 are met, "possession and cultivation of marijuana is no more criminal ... than the possession and acquisition of any prescription drug with a physician's prescription." (Id. at p. 482, 122 Cal.Rptr.2d 326, 49 P.3d 1067.)
Accordingly, the Compassionate Use Act grants patients who use marijuana for medicinal purposes "a limited immunity from [criminal] prosecution, which not only allows a defense at trial, but also permits a motion to set aside an indictment or information prior to trial." (People v. Mower, supra, 28 Cal.4th at p. 470, 122 Cal.Rptr.2d 326, 49 P.3d 1067.)
However, while the possession, cultivation, and use of marijuana for medicinal purposes under conditions specified in the Compassionate Use Act do not violate California's criminal laws, such conduct is illegal under the federal Controlled Substances Act. (21 U.S.C. §§ 841, 844; Gonzales v. Raich (June 6, 2005) ___ U.S. ___, 125 S.Ct. 2195, 2211, 162 L.Ed.2d 1 [the Controlled Substances Act "designates marijuana as contraband for any purpose"]; People v. Bianco (2001) 93 Cal.App.4th 748, 753, 113 Cal.Rptr.2d 392; Pearson v. McCaffrey (D.D.C.2001) 139 F.Supp.2d 113, 121.) As explained by the Supreme Court in United States v. Oakland Cannabis (2001) 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722, even if a patient is seriously ill, there is no medical necessity defense to the federal prohibition against manufacturing and distributing marijuana, and "nothing ... suggests that a distinction should be drawn between the prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act." (Id. at p. 494, 121 S.Ct. at p. 1719, 149 L.Ed.2d at p. 734, fn. 7.) In a recently decided case, Gonzales v. Raich, supra, ___ U.S. ___, 125 S.Ct. 2195, the court upheld Congress's authority under the Commerce Clause to prohibit the use of marijuana even if that use complies with California's Compassionate Use Act and the marijuana is cultivated and used only in California. (Id. at pp. ___ _ ___, 125 S.Ct. at pp. 2201-02, 2204-09.)
Plaintiff claims we cannot resort to federal law to resolve his claim under FEHA, but he refers us to no legal authority supporting the proposition that he is exempt from federal criminal statutes merely because he lives in California. In fact, the law is to the contrary. (United States v. Oakland Cannabis, supra, 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722.) Simply because state law does not prohibit plaintiff's conduct does not mean that federal law may not do so. (U.S. v. Cannabis Cultivators Club (N.D.Cal.1998) 5 F.Supp.2d 1086, 1100; cf. United States v. Rosenberg (9th. Cir.1975) 515 F.2d 190, 198, fn. 14.)
We decline plaintiff's invitation to hold that only California marijuana laws apply to his FEHA claim. Such a position raises significant issues of public policy that should be decided by the Legislature, or by the electorate via initiative, rather than by the courts.
For example, taken to its logical conclusion, plaintiff's position would mean that employers must treat the possession and use of marijuana for medicinal purposes just like the acquisition and use of any prescription drug with a physician's prescription. (See People v. Mower, supra, 28 Cal.4th at p. 482, 122 Cal.Rptr.2d 326, 49 P.3d 1067 ["As a result of the enactment of [the Compassionate Use Act], the possession ... of marijuana is no more criminalso long as its conditions are satisfiedthan the possession and acquisition *811 of any prescription drug with a physician's prescription].)" Thus, it could be asserted that if an employer allows other employees with disabilities to bring prescription medication to the workplace as an accommodation that enables them to perform the essential functions of their jobs, then the employer cannot discriminate against medicinal marijuana users by refusing to allow them to bring their medication to work also. If so, this would mean the employer would be compelled to tolerate on its premises the presence of a drug that is illegal under federal lawwhich, under circumstances not entirely speculative, could result in the employer's workplace being subject to a search conducted by federal authorities pursuing an employee's violation of federal criminal laws.
Another possible consequence is that if an employer must allow certain employees to possess medicinal marijuana at the workplace, so as not to discriminate against them if other employees are allowed to bring prescription medications to work, the employer would be precluded by the Drug-Free Workplace Act from contracting with the state for provision of goods or services. (Gov.Code, § 8350 et seq.)[5]
Another potential problem with plaintiff's position is that there is no safe method for an employer to determine whether a purported physician's recommendation that an employee use marijuana for medicinal purposes is legitimate, rather than the result of the employee's misrepresentation to the physician regarding his or her physical well being. (McDaniel v. Mississippi Baptist Medical Center (S.D.Miss.1994) 869 F.Supp. 445, 449 [even though a person may be taking drugs under a physician's supervision, if misrepresentation or deceit is involved in obtaining such drugs, the person has violated the Controlled Substances Act and has engaged in illegal use of drugs for purposes of the ADA]; accord, Weigert v. Georgetown University (D.D.C.2000) 120 F.Supp.2d 1, 9, fn. 9.) Unlike prescription drugs that are dispensed under regulated circumstances, the Compassionate Use Act requires only a physician's oral recommendation, which makes it much more difficult for the employer to determine the validity and legitimacy of the employee's use of medical marijuana. Consequently, the employer could be put to the Hobson's choice of either hiring an employee who may be using drugs illegally and is a substance abuser, or refusing to hire the employee and risking the expense of a lawsuit alleging discrimination.
Unless and until the Legislature, or the electorate, amends FEHA to compel an employer to accommodate an employee's medicinal use of marijuana, we conclude that an employer does not violate FEHA by firing, or refusing to hire, a person whose preemployment drug test reveals that the person is using an illicit drug, including marijuana which is illegal under federal law even when it is being used for medicinal purposes in accordance with the Compassionate Use Act. (Pilkington Barnes Hind v. Superior Court, supra, 66 Cal.App.4th at p. 34, 77 Cal.Rptr.2d 596; cf. Pernice v. City of Chicago, supra, 237 F.3d at p. 785.)
While some employers might be willing to employ persons who are using marijuana pursuant to the Compassionate Use Act, so long as they are able to perform the essential functions of the job and do *812 not engage in any disruptive behavior in the workplace, we cannot compel employers to do so. That would require employers to permit employee drug use that is illegal under federal law. A court has no legitimate authority to compel such a result.

III
Plaintiff's complaint also alleged a cause of action for wrongful termination in violation of a fundamental public policy. To support such a claim, the policy (1) must be supported by constitutional or statutory provisions, (2) must inure to the benefit of the public, rather than merely serve the interests of the individual, (3) must have been articulated at the time of the employee's discharge, and (4) must be fundamental and substantial. (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889-890, 66 Cal.Rptr.2d 888, 941 P.2d 1157.)
Plaintiff contends that permitting defendant to fire him for using marijuana in accordance with the Compassionate Use Act violates the fundamental public policy set forth in said act of ensuring that seriously ill Californians have the right to use marijuana under specified medical circumstances. (§ 11362.5, subd. (b)(1)(A).) In defendant's view, permitting employers to fire employees who exercise their statutory right to use marijuana for medicinal purposes conflicts with this policy and renders the Compassionate Use Act meaningless, since the lack of job protection undermines the mandated right to use marijuana. We are unpersuaded.
Although the Compassionate Use Act states that one of its purposes is to ensure the right of seriously ill patients to obtain and use marijuana when medically necessary (§ 11362.5, subd. (b)(1)(A)), it "does not trump" the application of federal law. (People v. Bianco, supra, 93 Cal.App.4th at p. 755, 113 Cal.Rptr.2d 392 (conc. & dis. opn. of Scotland, P.J.).) Read in context, the Compassionate Use Act does not confer the unfettered right to obtain and use marijuana for medicinal purposes, only the right to do so without incurring state criminal sanctions. (§ 11362.5, subd. (b)(1)(A), (B).) "[O]n its face [the Compassionate Use Act] purports only to exempt certain patients and their primary caregivers from prosecution under certain California drug laws-it does not purport to exempt those patients and caregivers from the federal laws." (U.S. v. Cannabis Cultivators Club, supra, 5 F.Supp.2d at p. 1094, orig. italics.)
Because an employer's decision not to employ someone who is violating federal criminal laws is not a criminal sanction imposed by the state, it does not violate the policy set forth in the Compassionate Use Act. Nothing in section 11362.5 mandates that an employer accept or ignore an employee's use of marijuana for medicinal purposes despite the fact that such use remains illegal under federal law. Indeed, the Compassionate Use Act says nothing about protecting the employment rights of seriously ill persons if they use marijuana to treat their illnesses. Perhaps this is because the proponents of the initiative primarily were concerned with ensuring access to marijuana for those who suffer from debilitating illnesses of the type that generally render them unable to work. Or the omission may have been intentional.
It is a cardinal rule of statutory construction that courts may not add provisions to a statute. (Adoption of Kelsey S. (1992) 1 Cal.4th 816, 827, 4 Cal.Rptr.2d 615, 823 P.2d 1216; Code Civ. Proc., § 1858.) In the absence of a statutory expression of intent to protect the jobs of medicinal marijuana users and to require *813 employers to ignore their employees' violations of federal criminal laws regarding marijuana, we decline to engage in judicial legislation to insert that which is missing from the statute. (County of Santa Clara v. Perry (1998) 18 Cal.4th 435, 446, 75 Cal.Rptr.2d 738, 956 P.2d 1191.) Such a policy decision must be made by the Legislature, or by the electorate via initiative. (Neighbours v. Buzz Oates Enterprises (1990) 217 Cal.App.3d 325, 334, 265 Cal.Rptr. 788 ["if there is a flaw in the statutory scheme, it is up to the Legislature, not the courts, to correct it"].)
Plaintiff suggests that the intent of the Compassionate Use Act (Proposition 215) to protect the jobs of medicinal marijuana users can be gleaned from the ballot pamphlet statements. He points to the opponents' statement that Proposition 215 "will make it legal for people to smoke marijuana in the workplace ... or in public places ... next to your children." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) rebuttal to argument in favor of Prop. 215, p. 60 (hereafter Pamphlet).) But plaintiff ignores that the opponents of Proposition 215 emphasized that the possession of marijuana is prohibited under federal law. (Ibid.) Since federal criminal statutes cannot be amended via the state initiative process, the opponents' claims of legality in the workplace logically pertained just to state criminal laws.
The opponents' statement asserts only that if Proposition 215 were approved by the voters, employees could use marijuana at the workplace without violating state criminal laws, not that the initiative would require employers to allow marijuana use in the workplace. There is nothing in the Legislative Analyst's analysis, or in the arguments in favor of the initiative, that would indicate Proposition 215 was designed to ensure job protection for medicinal marijuana users, rather than simply allow them to use marijuana free of state criminal sanctions. (Pamphlet, supra, Analysis by the Legislative Analyst, p. 59, argument in favor of Prop. 215, pp. 60-61.)
Expanding the purview of the Compassionate Use Act to include employment protection would be tantamount to impermissible judicial legislation. Courts "have no power to rewrite the statute to make it conform to a presumed intention that is not expressed." (County of Santa Clara v. Perry, supra, 18 Cal.4th at p. 446, 75 Cal.Rptr.2d 738, 956 P.2d 1191.) Consequently, we must conclude that an employer's firing, or refusing to hire, a person based on the person's illegal drug useincluding marijuana use which is illegal under federal law despite the Compassionate Use Actdoes not violate any fundamental public policy set forth in the Compassionate Use Act.[6]

IV
Plaintiff's last contention is that the parties' conduct created an implied in fact contract which indicated that he would not be discharged before the expiration of three years except for good cause. His claim is premised on the fact that he was offered a larger salary and benefits with less stock options, or a second option, which he accepted, of smaller salary and benefits with greater stock options upon vesting in three years. Plaintiff believes that the second option, along with other unidentified statements, policies, and practices of defendant, implied that he would be employed for at least three years so he could receive the benefit of his bargain. Thus, he argues, defendant could not terminate his employment before the end of *814 the three-year period except for cause, i.e., for "`"a fair and honest cause or reason, regulated by good faith ..."' [citation], as opposed to one that is `trivial, capricious, unrelated to business needs or goals, or pretextual....' [Citations.]" (Scott v. Pacific Gas & Electric Co. (1995) 11 Cal.4th 454, 467, 46 Cal.Rptr.2d 427, 904 P.2d 834.)
We need not address whether there was an implied in fact contract not to fire plaintiff except for cause. Even if there was, defendant had good cause to discharge plaintiff when it learned that he had failed his preemployment drug test. (Pilkington Barnes Hind v. Superior Court, supra, 66 Cal.App.4th at pp. 31-34, 77 Cal.Rptr.2d 596 [an employer may refuse to employ a person who has failed a drug test that is a precondition of employment, even if the person has begun to work for the employer]; Moore v. May Dept. Stores Co. (1990) 222 Cal.App.3d 836, 839, 271 Cal.Rptr. 841 [violation of company policies is just cause to terminate the employee]; cf. Pernice v. City of Chicago, supra, 237 F.3d at p. 785.)

DISPOSITION
The judgment is affirmed.
We concur: RAYE and HULL, JJ.
NOTES
[1] Plaintiff also pleaded a cause of action for breach of the implied covenant and fair dealing, but agreed with defendant that the claim is superfluous to other claims pleaded by plaintiff. Accordingly, it is not at issue on appeal.
[2] Government Code section 12940 states in pertinent part: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of the ... physical disability, mental disability, medical condition, ... of any person, to refuse to hire or employ the person ..., or to bar or to discharge the person from employment.... [¶] (1) This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations. [¶] (2) This part does not prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her essential duties, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations."
[3] Because FEHA is modeled on the federal Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.) and the ADA (42 U.S.C. § 12101 et seq.), decisions interpreting those laws are relevant when interpreting similar provisions of FEHA. (Finegan v. County of Los Angeles, supra, 91 Cal.App.4th at p. 7, 109 Cal.Rptr.2d 762; McCullah v. Southern Cal. Gas Co. (2000) 82 Cal.App.4th 495, 499, 98 Cal.Rptr.2d 208.)
[4] Section 11362.5 states in pertinent part: "(a) This section shall be known and may be cited as the Compassionate Use Act of 1996. [¶] (b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows: [¶] (A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction. [¶] (C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana. [¶] (2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes. [¶] (c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes. [¶] (d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."
[5] The Drug-Free Workplace Act provides that to obtain state contracts, a business must certify it prohibits the possession of controlled substances in the workplace. For purposes of the act, controlled substances are defined in accordance with the federal Controlled Substances Act. (Gov.Code, §§ 8351, subd. (c), 8355.)
[6] To the extent plaintiff's claim of wrongful termination in violation of public policy is premised on FEHA, it fails for the reasons set forth in part II of this opinion, ante.