**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 24 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICK ESPINDOLA, | No. 21-55534 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-03702-JWH-E |
| v. | |
| WISMETTAC ASIAN FOODS, INC., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
John W. Holcomb, District Judge, Presiding

Argued and Submitted May 10, 2022
Pasadena, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and ROBRENO,** District
Judge. Dissent by Judge ROBRENO.

Rick Espindola appeals from the district court's order granting summary

judgment to his former employer, Wismettac Asian Foods, Inc., in his action

alleging violations of California law stemming from his termination after he failed

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Eduardo C. Robreno, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

a drug test.  We reverse the district court's grant of summary judgment as to all claims relying on California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940, but affirm the grant of summary judgment on Espindola's intrusion into private affairs claim.

**1.**  Wismettac was not entitled to summary judgment on Espindola's disability discrimination claim.  As an initial matter, California courts have repeatedly recognized that a medical condition causing chronic back pain can qualify as a disability under FEHA.  *See, e.g.*, *Colmenares v. Braemar Country Club, Inc.*, 63 P.3d 220, 221–22 (Cal. 2003); *Spitzer v. The Good Guys, Inc.*, 96 Cal. Rptr. 2d 236, 237–38 (Ct. App. 2000).  Additionally, FEHA defines disability broadly and does not require that the condition suffered by the plaintiff "result in utter inability or even substantial limitation on the individual's ability to perform major life activities." *E.E.O.C. v. United Parcel Service, Inc.*, 424 F.3d 1060, 1071 (9th Cir. 2005).  Any condition that limits a major life activity, including working, renders a plaintiff disabled under the statute.  Cal. Gov't Code § 12926.1(c).  Espindola provided evidence that he has a condition resulting in chronic back pain that makes it difficult to sit at his desk for a full day, and that is sufficient to create a genuine dispute of fact about whether he is disabled.

Wismettac also argues that Espindola did not do enough to put the company on notice that he was disabled or that his work was affected.  We disagree.

Espindola's evidence indicates that he (1) provided the company with a state-issued medical marijuana card; (2) informed the company that he was being treated for chronic back pain based on a review of his medical records, MRIs, and doctor's notes; and (3) asked to take physician-prescribed pain pills during the workday to treat his pain. He also stated that the pain was making it difficult to sit at his desk a full day. This is not a case, like *Arteaga v. Brink's, Inc.*, 77 Cal. Rptr. 3d 654, 670–71 (Ct. App. 2008), in which an employer was presented with an employee's purely subjective reports of pain that were contradicted by medical expertise.

Once Espindola established that he was disabled and that the company was aware of his disability when it terminated him, the burden shifted to Wismettac to demonstrate that he was terminated for a legitimate, nondiscriminatory reason. *See Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113–14 (Cal. 2000). If the company successfully makes such a showing, Espindola is then afforded the opportunity to attack the proffered reason as pretextual. *Id.* Wismettac asserted only one reason for its termination of Espindola: his failure to pass a company-required drug test administered approximately one week after he started employment. We need not decide whether this reason satisfies Wismettac's initial burden. Even assuming that it does, Espindola offered evidence sufficient for a jury to conclude that the company's asserted reason for discharging him was pretextual.

Espindola asserts that Wismettac's claimed policy of not hiring anyone

unless that person passes a pre-employment drug test is pretextual because the policy is not written down anywhere and because evidence indicates that any testing requirement is actually a flexible one. He correctly notes that the only relevant written policy is in the company's employee handbook but that the handbook states only that all employees must take a pre-employment drug test— not that *passing* the test is a requirement for employment. Indeed, the handbook suggests that failing a post-employment drug test can lead to consequences up to and including termination—thereby suggesting that the company does not strictly enforce a zero-tolerance drug policy. In addition, Wismettac's failure to include the testing requirement in Espindola's offer letter, Human Resource's failure to raise Espindola's incomplete drug test on his first day, Espindola's ability to start work before testing, and the temporary suspension of Espindola's drug test all suggest that any testing policy might not be strictly enforced—contrary to Wismettac's representations. That notion is supported by evidence that Espindola's supervisor said that "there would be nothing to worry about regarding any drug test" and that "everything was going to be okay" when Espindola voiced his concerns about passing a drug test.[1]

---

[1] The dissent contends that Espindola never became an employee because he had not yet passed what the dissent characterizes as a "mandatory" pre-employment drug test. In our view, a reasonable jury could conclude that the test was not in fact a mandatory pre-condition of Espindola's employment.

Moreover, Espindola points out that the typical purpose of a pre-employment drug test is to allow employers to determine, before investing in a new hire, whether a prospective new employee has engaged in past drug use and thus may be likely to continue using drugs once employed. *See Loder v. City of Glendale*, 927 P.2d 1200, 1222–23 (Cal. 1997). But here, Espindola had already disclosed his past marijuana use to Wismettac and admitted that he failed an at-home test, so the workplace test would not reveal any new information to the company about his pre-employment marijuana use. Espindola also notes that Wismettac permitted him to continue working and representing the company even after he had admitted to recent marijuana use, and that Espindola's supervisor did not believe Espindola was still using marijuana while he was working at Wismettac.

Espindola argues that the timing of the test further bolsters an inference of pretext. He alleges that, during his first week of employment, Wismettac provided assurances that the company was suspending its drug-testing requirement for him. According to Espindola's version of events, which a jury could accept as credible, the company changed its tune and insisted that Espindola take the workplace drug test only after he had disclosed that his back pain was worsening and asked permission to take pain pills while at work. Wismettac responds that it is undisputed that Espindola's supervisor recently received confirmation that all

employees had to take the pre-employment drug test, and the timing of that confirmation dictated the timing of Espindola's termination. But evidence indicates that the supervisor received the confirmation and yet still did not enforce the drug test requirement until after Espindola's disclosures—despite opportunities to do so earlier.

Given the lack of clarity regarding Wismettac's pre-employment drug testing policy, the temporal proximity of the drug test to Espindola's disclosure of his worsening back pain, and the test's apparent redundancy, a reasonable jury could find that Wismettac used the positive test as a pretext to terminate Espindola because of his disability. *See, e.g.*, *Moore v. Regents of Univ. of Cal.*, 206 Cal. Rptr. 3d 841, 860 (Ct. App. 2016) (inferring potential pretext from "the timing of the company's termination decision" and "the terminated employee's job performance before termination" (quoting *Flait v. N. Am. Watch Corp.*, 4 Cal. Rptr. 2d 522, 530 (Ct. App. 1992)).

We reverse the district court's grant of summary judgment to Wismettac on Espindola's disability discrimination claim. The district court also granted summary judgment to Wismettac on Espindola's claims for failure to prevent discrimination, retaliation, and wrongful termination in violation of public policy based on its conclusion that his underlying disability discrimination claim failed. Given our disagreement with that conclusion above, we also reverse the grant of

summary judgment as to these related claims.

**2.** In light of the disputed issues discussed above, Wismettac was also not entitled to summary judgment on Espindola's claims for failure to accommodate and failure to engage in an interactive process. Although these are distinct claims under California law, they share common elements and often implicate each other. *Id.* at 862–63. Here, the claims can be analyzed together.

The California Supreme Court has suggested that FEHA may require an employer to accommodate a disabled employee's doctor-approved medical use of legal substances that could potentially impair job performance. *See Ross v. RagingWire Telecommc'ns, Inc.*, 174 P.3d 200, 204 (Cal. 2008). The same is true under federal law, which California courts look to when interpreting and applying FEHA. *Guz*, 8 P.3d at 1113; *see, e.g.*, U.S. Equal Emp. Opportunity Comm'n, EEOC-NTVA-2020-2, Use Of Codeine, Oxycodone, And Other Opioids: Information For Employees (2020). Espindola's request to take his prescribed pain medication during the workday could be understood as a request for an accommodation under FEHA that triggered Wismettac's obligation to engage in an interactive process to determine an effective accommodation. *See Moore*, 206 Cal. Rptr. 3d at 862–63. Wismettac was not necessarily obligated to allow Espindola to take his medication at work, but the company was obligated to do more than flatly deny his request and then terminate him.

**3.** The district court properly granted summary judgment to Wismettac on Espindola's intrusion into private affairs claim. California employers are free to conduct suspicionless drug testing of new hires even if the test is conducted shortly after the employee begins working. *See Loder*, 927 P.2d at 1225–26; *Pilkington Barnes Hind v. Superior Ct.*, 77 Cal. Rptr. 2d 596, 600 (Ct. App. 1998). Espindola admits that he was made aware of the testing requirement before beginning employment, and the test was conducted only one week after he started work. He also acknowledged that he consented to taking the test and was aware that it was intended to screen him for illegal drug use, thereby eliminating any claim that he maintained a reasonable expectation of privacy. *See Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712–13 (9th Cir. 2005). Under these circumstances, he cannot maintain his claim for intrusion into private affairs.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

Espindola shall recover his costs on appeal.

FILED

JUN 24 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBRENO, District Judge, dissenting:

This case involves a suspicionless pre-employment drug test and an employer's ability to reject an applicant who fails that test. The twist here is that, at Espindola's request, Wismettac allowed him to begin working before he completed (and tested positive on) the mandatory pre-employment drug test.

I do not disagree with the majority's well-thought-out analysis of the law regarding employment discrimination claims. However, in this diversity case under California law, there is a threshold question that the majority overlooks: was Espindola an employee for the purposes of his claims? I suggest that he was not and, as a result, he has no claim for employment discrimination based on the suspicionless pre-employment drug test nor a right to accommodations or to engage in an interactive process with Wismettac.

First, the California Supreme Court held in *Loder v. City of Glendale* that requiring otherwise legal suspicionless pre-employment drug testing does not violate, inter alia, the ADA, the FEHA, or the United States Constitution. 14 Cal. 4th 846, 865, 882 (1997).

Second, under California law, a prospective employee cannot transform a suspicionless pre-employment drug test into a post-employment drug test by

delaying the test until after they report to work. In *Pilkington Barnes Hind v.*

*Superior Court*, the California Court of Appeals[1] explained succinctly that:

> a job applicant, who requests and receives a delay in submitting to the preemployment drug test permitted by *Loder* until after the start of employment, may not evade the employer's testing requirement postemployment on the ground the applicant thereby became an "employee" and is, consequently, immune from such testing. In such circumstances, and for purposes of suspicionless drug testing, the job applicant who caused the drug testing delay must submit to such testing after the employment date. If the "employee" fails the test given in the brief period between employment and administration of the test, that employment, conditioned on passing the test which the "employee" delayed, may be terminated.

66 Cal. App. 4th 28, 34 (1998). I suggest *Hind* is directly on point and the clear language quoted above is not distinguishable from this case on the basis that Gormley, Espindola's future supervisor, learned Espindola had smoked marijuana when he reported to work in California.[2] Likewise, while Espindola was tested seven

---

[1]    While the California Supreme Court has not ruled on the issue, I predict that it would follow the well-reasoned California Court of Appeal decision in *Hind*. *See Fast Trak Inv. Co., LLC v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020) (providing that a federal court may predict how the highest state court would rule based on, inter alia, state appellate court decisions).

[2]    In *Hind*, the court recognized that part of the reason for suspicionless pre-employment drug tests is that the employer does not have the opportunity to observe an applicant over time for possible drug use. 66 Cal. App.4th at 31-32. I recognize that, here, Gormley did not need to observe Espindola because he knew Espindola had smoked marijuana. Regardless, this distinction does not take Espindola out of the reach of the *Hind* mandate that an employee cannot transform a legal pre-employment drug test into a post-employment drug test by implementing delays.

2

days (and fired ten days) after his employment began and actually performed work for Wismettac, and the petitioner in *Hind* was tested four days after beginning employment and had not yet performed any substantial work, *id.* at 32, I again point out that the language in *Hind* is unequivocable regarding the effects of an applicant delaying a suspicionless pre-employment drug test. Moreover, seven days is still a "brief period between employment and administration of the test." *Id.* at 34.

Espindola delayed taking the drug test until after he reported for work in California. Thus, under the clear language of *Hind*, Espindola is still an applicant in relation to the drug testing requirements. Pursuant to *Hind* and *Loder*, Espindola could "not evade" the results of the drug test by virtue of now being an employee, and he could "be terminated" by Wismettac for failing the test as if he were an applicant rather than an employee. *Id*.

As a result, I suggest the majority erred in reaching the merits of Espindola's claims regarding employment discrimination, lack of accommodation, and lack of an interactive process, and in reversing the district court.

Thus, I respectfully dissent.